IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                 No. CR 11-0618 JB

JERRY ALAN BEDNORZ,

       Defendant.

## UNSEALED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Motion for Psychiatric Evaluation, filed October 15, 2011 (Doc. 29). The Court held competency hearings on January 20, 2012, and March 26, 2012. The primary issue is whether the Court should find Defendant Jerry Alan Bednorz competent to stand trial. Because the parties now agree that the Court should find Bednorz incompetent at this time to stand trial, and because the Court believes that there is sufficient evidence to find by a preponderance of the evidence that Bednorz lacks the capacity to understand the nature and object of the proceedings against him and to assist in preparing his defense, the Court will find that Bednorz is currently incompetent to stand trial. The Court will commit Bednorz to the Attorney General's custody for further mental examination for a period not to exceed four months.

## PROCEDURAL BACKGROUND

On March 16, 2011, Plaintiff United States of America filed an indictment charging Bednorz

---

[1]In its Sealed Memorandum Opinion and Order, filed April 6, 2012 (Doc. 68)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MOO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

with felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Indictment at 1-2 (Doc. 3).  On October 5, 2011, Bednorz filed his Motion for Psychiatric Evaluation.  See Doc. 29.  Bednorz moved the "Court for a court-ordered psychiatric evaluation for the purpose of determining whether Defendant is suffering from a mental disease rendering him unable to assist properly in his defense."  Motion for Psychiatric Evaluation at 1. Bednorz states in the Motion for Psychiatric Evaluation that his behavior "made counsel question whether Defendant suffers from a mental disease or defect such that he is unable to understand the nature or consequences of the proceedings against him and to assist properly in his defense." Motion for Psychiatric Evaluation at 1.  Bednorz requested a "local psychiatric examination and report."  Motion for Psychiatric Evaluation at 2.  Bednorz asserted that the United States does not oppose the relief sought in the Motion for Psychiatric Evaluation.  See Motion for Psychiatric Evaluation at 2.  The Court earlier entered an order permitting a local psychiatric examination and report.  See Order Granting Defendant's Motion to Determine Mental Competency at 1, filed October 7, 2011 (Doc. 34).

On December 30, 2011, Abraham Fiszbein, M.D. issued his report concluding that Bednorz is not competent to stand trial.  See Comprehensive Psychiatric Evaluation (dated December 30, 2011), filed January 3, 2012 (Doc. 51)("Report").  Dr. Fiszbein states that he relied on his interviews with Bednorz and the criminal charges filed against Bednorz to determine whether Bednorz is competent.  See Report at 2.  Bednorz reported to Dr. Fiszbein that he was stopped on December 31, 2009, as part of a traffic violation.  See Report at 2.  Bednorz noted that a police officer found a borrowed firearm in his possession, which he planned on returning.  See Report at 2.  He asserted that it was his "'true belief' . . . that he was stopped because the officer is a neighbor who 'profiles and stops gays with long hair because they are no good.'" Report at 3.  Bednorz noted that a

passenger with him at the time of the arrest, who was once a deputy sheriff in Arizona and is now a felon, was not arrested for the same offense even though he was carrying a weapon.  See Report at 3.  Dr. Fiszbein stated that, during the interview, Bednorz "appeared unkempt and depressed, had a guarded and evasive attitude, complained of insomnia, and had poor energy."  Report at 3. Bednorz asserted that he could not sleep because of noise from his neighbors, but "denied any auditory or visual hallucinations or any type of delusions."  Report at 3.  Dr. Fiszbein represented that Bednorz' "behavior was not congruent with his denial of having delusional ideas."  Report at 3.  Dr. Fiszbein reported that Bednorz denied "any suicidal or homicidal ideas or plans or attempts." Report at 3.

Bednorz denied "any past inpatient or outpatient psychiatric history, or any treatment with any psychiatric medications."  Report at 3.  Bednorz described to Dr. Fiszbein "a past history of depression or sudden episodes of increased energy, racing thoughts, talking very fast, and paranoia." Report at 3.  Dr. Fiszbein stated that this information "suggests the diagnosis of Bipolar Disorder." Report at 3.  Bednorz denied any history of family psychiatric problems.  See Report at 3.  Bednorz noted that he "has an Associate degree in Drafting and Design."  Report at 4.  Bednorz asserted that "he is a construction worker and specialized in welding."  Report at 4.  When discussing Bednorz' mental status, Dr. Fiszbein made the following findings:

> Mr. Bednorz appears as an unkempt looking man, who seems ill at ease, depressed, and anxious.  He is cooperative with the interview and has good eye contact.  His behavior alternates between looking tense and crying frequently.  His affect is constricted and his mood is sad and irritable.  His speech rate and flow are normal, and monotonous.  His thought processes are tangential and disorganized with periods of coherence.  He gets easily distractible, and perseverates about paranoid topics.  He denies any tactile, auditory or visual hallucinations.  He has delusions of paranoia, believing that the "whole" legal system conspires against him. "Somebody that does not like me is coordinating my arrest."  He denies any suicidal or homicidal ideas or plans.

Report at 4.

During cognitive testing, Dr. Fiszbein found Bednorz to be "alert and oriented to self, place, date and circumstance."  Report at 4.  Dr. Fiszbein concludes that Bednorz short-term recall was normal and his long-term memory was fair.  See Report at 4.  Dr. Fiszbein finds Bednorz' concentration to be fair and his abstract thinking to be fair.  See Report at 4.  Bednorz stated that the role of a judge in a trial is "to oversee the proceedings and pronounce the sentence."  Report at 4.  Bednorz related that the role of a United States Attorney is "to convict you."  Report at 5.  Bednorz reported that the role of a jury is "to decide guilt or innocence."  Report at 4.  He said that the role of a defense attorney is "to help get the best outcome for the defendant."  Report at 4.  Bednorz rejected "the idea of the confrontational nature of the legal process."  Report at 4-5.  Bednorz "strongly believes that the U.S. Attorney, the police, and his attorney (even though he trusts him) are 'part of a network' that negotiates favors reciprocally (for example, 'Don't fight me on this one, and I will not fight you on the other one.')."  Report at 5.  Dr. Fiszbein concludes that Bednorz "has a factual but not a rational understanding of the charges against him (he has the paranoid conviction that the arrests are made by 'profiling and friendship')."  Report at 5 (emphasis in original).  Dr. Fiszbein also concludes that Bednorz "does not have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding due to his paranoia and the hopeless belief that 'no one' can defeat the conspiracies."  Report at 5 (emphasis in original).  Dr. Fiszbein relates that "there is a substantial probability that" Bednorz "could obtain this capacity in the near future," but asserts that it would take further evaluations to determine whether Bednorz' condition has a psychiatric or neurological origin.  Report at 5.  Dr. Fiszbein notes that there is a potential neurological basis, because Bednorz was "hit in the head repeatedly during his childhood and adolescence."  Report at 5.

On January 19, 2012, Bednorz filed a Motion for Outpatient Treatment Under 18 U.S.C. § 4241(d).  See Doc. 57 ("Motion for Outpatient Treatment").[2]  At the competency hearing on January 20, 2012, the Court noted that it had some concerns about the level of detail contained in Dr. Fiszbein's Report.  See Transcript of Hearing at 2:9-21 (taken January 20, 2012)(Court)("Jan. 20, 2012 Tr.").[3]  The United States noted that it had similar concerns about the contents of the Report.  See Jan. 20, 2012 Tr. at 2:22-3:7 (Castellano).  The United States asserted that it is often willing to stipulate to a doctor's findings of incompetence, but noted that it had significant hesitancy about stipulating to Dr. Fiszbein's findings given the lack of detail in the Report.  See Jan. 20, 2012 Tr. at 3:8-22 (Castellano).  The United States represented that it had no objection to the Court admitting the Report and relying upon it.  See Jan. 20, 2012 Tr. at 3:23-4:3 (Court, Castellano).  Bednorz noted that, if the Court finds him incompetent, he would prefer outpatient evaluation as opposed to evaluation in the federal prison system.  See Jan. 20, 2012 Tr. at 4:13-21 (Elsenheimer).  Bednorz stated that he has done well so far working with United States Pretrial Services.  See Tr. at 5:2-11 (Elsenheimer).  Bednorz asserted that he is not in a position to determine whether he is currently competent.  See Tr. at 5:18-6:1 (Court, Langell).  The Court stated that it was having trouble distinguishing between Dr. Fiszbein's conclusion that Bednorz had a factual understanding of the charges against him, but not a rational understanding of those charges.  See Jan. 20, 2012 Tr. at 6:8-11 (Court); id. at 8:3-13 (Court).  The Court noted that it was not comfortable declaring Bednorz incompetent, on the record before it, without stipulations to incompetency from each party.

_____

[2]On March 28, 2012, Bednorz filed a notice of withdrawal that withdrew this Motion for Outpatient Treatment.  See Notice to Withdraw Defendant's Motion for Outpatient Treatment Under 18 U.S.C. § 4241(d) at 1, filed March 28, 2012 (Doc. 66).

[3]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

See Jan. 20, 2012 Tr. at 19:16-20:6 (Court).  The Court stated that the best method of proceeding would be to have Dr. Fiszbein provide a more detailed basis for his conclusions that Bednorz is incompetent and to continue the competency hearing.  See Jan. 20, 2012 Tr. at 19:16-20:20 (Court).  The parties agreed that this proposal was acceptable.  See Jan. 20, 2012 Tr. at 20:24-21:20 (Court, Castellano, Langell).

At the competency hearing on March 26, 2012, Bednorz represented that he no longer was pursuing his request for outpatient treatment and that he was amenable to treatment within a federal correctional facility, because Bednorz has not been receiving medication that addresses his paranoia issues.  See Transcript of Hearing at 2:16-24 (taken March 26, 2012)(Langell)("Mar. 26, 2012 Tr.").  James N. Langell, Assistant Federal Public Defender, noted that he had spoken with Dr. Fiszbein and that Dr. Fiszbein related that the underlying problem was Bednorz' paranoia.  See  Mar. 26, 2012 Tr. at 2:24-3:16 (Langell).  Mr. Langell asserted that Dr. Fiszbein told him that, while a general sense of paranoia about the government is not problematic, Bednorz' personalized feeling that the government is pursuing him is a more significant phenomenon psychologically.  See Mar. 26, 2012 Tr. at 3:7-16 (Langell).  Mr. Langell stated that he believes Bednorz will receive better treatment in a federal facility.  See Mar. 26, 2012 Tr. at 3:17-24 (Langell).  Mr. Langell asserted that he agrees with Dr. Fiszbein's findings.  See Tr. at 4:11-12 (Langell).  Mr. Langell noted that Bednorz is not currently receiving the medication he needs to treat his paranoia at the current facility where he receives treatment.  See Mar. 26, 2012 Tr. at 4:22-5:2 (Langell).  The United States noted that, after having heard Dr. Fiszbein's additional comments about his Report and his findings, it now feels comfortable that there is sufficient evidence to support a finding of competency.  See Mar. 26, 2012 Tr. at 6:14-25 (Castellano).  The parties then agreed that the Court could use Dr. Fiszbein's findings in the Report as the basis for concluding by a preponderance of the evidence that Bednorz is

incompetent.  <u>See</u> Mar. 26, 2012 Tr. at 7:1-14 (Court, Castellano, Langell).

<u>**LAW REGARDING MENTAL EXAMINATIONS**</u>

"It has long been accepted that  a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."  <u>Drope v. Missouri</u>, 420 U.S. 162, 171 (1975).  "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."  <u>Drope v. Missouri</u>, 420 U.S. at 171 (citing <u>Pate v. Robinson</u>, 383 U.S. 375 (1966)).  Due process does not require a greater burden of proof in a competency hearing than a finding by a preponderance of the evidence.  <u>See</u> <u>Medina v. California</u>, 505 U.S. 437, 446-52 (1992).

Under 18 U.S.C. § 4241(a), on the defendant's, the United States', or the court's own motion, the trial court must order a hearing to determine the defendant's competency to stand trial if there is reasonable cause to believe that the defendant is incompetent.  <u>See</u> 18 U.S.C. § 4241(a).  18 U.S.C. § 4241(b) provides that a court may order a psychological examination pursuant to 18 U.S.C. § 4247(b) and (c) before the hearing.  <u>See</u> 18 U.S.C. § 4241(b).  18 U.S.C. § 4241(c) requires that the competency hearing be conducted pursuant to 18 U.S.C. § 4247(d), which provides for: (i) representation of the defendant by counsel; (ii) an opportunity for him to testify, to present evidence, and to subpoena witnesses on his behalf; and (iii) the opportunity to confront and to cross examine witnesses.  <u>See</u> 18 U.S.C. §§ 4241(c), 4247(d).  The court then makes its determination and disposition pursuant to 18 U.S.C. § 4241(d) regarding whether the defendant is competent to stand trial.  18 U.S.C. § 4241(d) provides:

> (d)   **Determination and disposition.** -- If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent

-7-

that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.  The Attorney General shall hospitalize the defendant for treatment in a suitable facility --

(1)     for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2)     for an additional reasonable period of time until --

    (A)     his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

    (B)     the pending charges against him are disposed of according to law;

      whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

A court "must first determine, by a preponderance of the evidence, whether the Defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  United States v. Morales-Gonzales, 376 F.Supp.2d 1066, 1070 (D.N.M. 2004)(Browning, J.)(internal quotation marks omitted).  If the Court concludes that the defendant is competent, then the case will proceed to trial.  See United States v. Morales-Gonzales, 376 F.Supp.2d at 1070.  If the Court concludes that the defendant lacks sufficient mental competency to proceed to trial, the statutory directive is clear.  See United States v. Morales-Gonzales, 376 F.Supp.2d at 1070.  "[I]f there is a finding of incompetence to stand trial, there must be a period of

-8-

hospitalization."  United States v. Morales-Gonzales, 376 F.Supp.2d at 1070 (alteration in original)(internal quotation marks omitted).

### ANALYSIS

The Court notes that Bednorz has withdrawn his request for outpatient treatment.  See Notice to Withdraw Defendant's Motion for Outpatient Treatment Under 18 U.S.C. § 4241(d) at 1, filed March 28, 2012 (Doc. 66).  Because the parties agree that the Court should find Bednorz incompetent at this time to stand trial, and because the Court believes that there is sufficient evidence in the record to find Bednorz incompetent, the Court will find that Bednorz is currently incompetent to stand trial.  The Court will commit Bednorz to the Attorney General's custody for further mental examination for a period not to exceed four months.

A court "must first determine, by a preponderance of the evidence, whether the Defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  United States v. Morales-Gonzales, 376 F.Supp.2d at 1070 (internal quotation marks omitted).  If the Court concludes that Bednorz is competent, then the case will proceed to trial.  See United States v. Morales-Gonzales, 376 F.Supp.2d at 1070.  If the Court concludes that Bednorz lacks sufficient mental competency to proceed to trial, the statutory directive is clear.  See United States v. Morales-Gonzales, 376 F.Supp.2d at 1070.  "[I]f there is a finding of incompetence to stand trial, there must be a period of hospitalization."  United States v. Morales-Gonzales, 376 F.Supp.2d at 1070 (alteration in original)(internal quotation marks omitted).

Bednorz' paranoia about some form of conspiracy to prosecute him supports a finding of incompetency.  That paranoia might have a significant impact on Bednorz' ability to assist in his own defense and understand the nature of the proceedings against him.  While a person is not

incompetent merely because they have a negative attitude towards governmental authority, Bednorz' ideas of the alleged conspiracy against him are somewhat fantastical.  Additionally, there are signs that Bednorz has erratic behavior and cannot always control his emotions.  Notably, with proper treatment and medication, Bednorz may become competent, and this case can then proceed to trial. His condition may be treatable, and Bednorz may be able to proceed to trial once his condition is more under control.  At this time, however, proceeding to trial with Bednorz in his current mental state would violate his due-process rights.  See Drope v. Missouri, 420 U.S. at 171.  The risk of violating those rights is substantial given Bednorz' present mental condition.

**IT IS ORDERED** that the Motion for Psychiatric Evaluation, filed October 15, 2011 (Doc. 29), is granted.  The Court finds that Defendant Jerry Alan Bednorz is currently incompetent to stand trial.  The Court will commit Bednorz to the Attorney General's custody for further mental examination for a period not to exceed four months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Randy M. Castellano
W. Ronald Jennings
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*

Aric G. Elsenheimer
James N. Langell
   Assistant Federal Public Defenders
Federal Public Defender Office
District of New Mexico
Las Cruces, New Mexico

   *Attorneys for the Defendant*